COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| AUSTIN BHARADWAJA and RYAN BHARADWAJA, | § | No. 08-24-00075-CV |
| Appellants/Cross-Appellees, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| MICHAEL HAYS; ELIZABETH HAYS; and PANDA PAL PROPERTY, MANAGEMENT, LLC, | § | of El Paso County, Texas |
| | § | (TC# 2023-CCV00813) |
| Appellees/Cross-Appellants. | § | |

## MEMORANDUM OPINION

In the underlying lawsuit, Appellants, Austin Bharadwaja and Ryan Bharadwaja, sued Appellees, Michael Hays, Elizabeth Hays, and Panda Pal Property, Management, LLC, on claims arising from contaminated water and a malfunctioning septic tank located on property the Bharadwajas leased from the Hayses. Following a bench trial, the trial court awarded the Bharadwajas partial relief on their claims. In three issues on appeal, the Bharadwajas assert the trial court erred by (1) failing to award civil penalties and a full rent credit on their two repair or remedy claims, (2) denying relief on their claim that the Hayses willfully violated a statute requiring ownership disclosure, and (3) arbitrarily reducing their attorney's fees award. In their cross-appeal, the Hayses assert the trial court improperly admitted into evidence various water

sample reports that the Bharadwajas failed to authenticate. In the alternative, the Hayses assert (1) the Bharadwajas failed to satisfy the statutory prerequisites for rent reduction, (2) there is insufficient evidence of diminished rent value and that the Bharadwajas mitigated their damages, (3) there is no evidence to support an award of hotel expenses, and (4) the trial court erred in awarding the Bharadwajas any attorney's fees. We reverse in part, render in part, and affirm in part.

## I. FACTUAL BACKGROUND

The Hayses are the owners of property leased to the Bharadwajas, and Panda Pal Property, Management, LLC (Panda Pal) is the company hired by the Hayses to manage the property. The Hayses and Bharadwajas entered into a residential lease agreement on June 14, 2023. The leased property included a house and a small "home on wheels" located behind the house. Rent in the amount of $2,800 was due monthly. Ryan Bharadwaja testified they were current on the rent.

### A. The Bharadwajas' testimony regarding water system contamination

The Bharadwajas moved into the residence on July 5th, and on that date, Ryan noticed "a horrible [very sulfuric] smell coming from the water." He testified that they immediately notified Panda Pal and were told "the water was fine." Ryan said they "just went about our day until I began to get sick from the water a few days later." Ryan said he experienced nausea, diarrhea, a stomachache, and sweats. He said they stopped using the water, purchased bottled water, and stayed at a hotel. Ryan said, "for our own safety, we shouldn't be staying in the house" and they stayed at the hotel from July 5th until July 18th, the date on which the septic tank was pumped after it overflowed into the house.

On July 8th, the Bharadwajas informed Panda Pal that the water was not potable and was making them sick. Ryan said Panda Pal again insisted the water "was fine." At this point, the Bharadwajas took it upon themselves to have the water tested through the County of El Paso and

2

the test revealed the presence of total coliform bacteria in the water. On July 13th, the Bharadwajas emailed Panda Pal again notifying it about the "foul smell from the water," informing it that the water "failed the City's water test," and providing a copy of the test results showing the presence of coliform in the water.

On August 4th, the Hayses' attorney emailed the Bharadwajas' attorney to state that the Hayses were "not in a position to afford the remediation and repair [of the well water condition], and therefore, [were] agreeable to terminating the Lease or considering an offer for [the Bharadwajas] to purchase the property at its appraised value on terms acceptable to" the owners.[1] Attached to the email were "proposals for correcting the well water condition." The Bharadwajas did not receive the full report on the testing ordered by Panda Pal until August 8th. The report showed the presence of total coliform bacteria in the water as well as a high level of arsenic.

On August 17th, the Bharadwajas sued the Hayses in justice of the peace court alleging (1) failure to repair or remedy the contaminated water on the property, (2) failure to repair or remedy the septic tank, (3) failure to disclose the correct address of the owners, and (4) preventing their access to a small mobile home on the property. A bench trial before the justice of the peace court commenced on September 5th and the court signed its judgment on September 8th. The justice of the peace court ordered the Hayses to take reasonable action to repair or remedy the contaminated water condition and awarded the Bharadwajas (1) $15,423, which included actual damages, civil penalties, and attorney's fees; (2) $527.85 in court costs, together with post-judgment interest; and (3) reduced rent in the amount of $800 effective from the date of the judgment until the Hayses

---

[1] Ryan testified they told Panda Pal "that, you know, where are we going to go. You're not offering us another rental. We've spent over thousands and thousands of dollars for this move, and you know, it's just not feasible for us to be moving again."

took reasonable action to repair or remedy the water condition.[2] The Hayses appealed to the county court at law.

At some point, the Bharadwajas and the Hayses agreed that a water technician (Andres "Andy" O'Brien) would install a water filtration system. In an email dated October 3rd, Panda Pal informed the Bharadwajas that O'Brien would go to the property on October 4th, "at 12:00 pm for another assessment regarding the filtration system on the property." The Bharadwajas replied that they would be out of town and the technician needed to be rescheduled for the next week. Also on October 3rd, the Bharadwajas' attorney emailed his various concerns to the Hayses' attorney:

> I am concerned that this will interfere with our case on appeal. This is equivalent to discovery unauthorized by Judge Enriquez being sought after the time of judgment, without meaningful notice or opportunity to respond.

> We need representations consistent with the fact that the water quality is a driving subject of the appeal, including: (1) a description of who the "water filtration technician" is and what exactly he will do; (2) what the "assessment" the technician will generate will be; and (3) a statement of whether the Property Manager and Owners will use the "assessment" or related testimony or evidence for the appeal. To be clear, we are not refusing the Property Manager an opportunity to attempt to remediate the water quality, but as I understand it, the Property Manager and Owners currently dispute the judgment requiring them to remediate the water. We need transparent communication and an opportunity to discuss, not ultimatums.

> We also need more than one day's notice and the opportunity to have one of the Bharadwajas or a third party present for the assessment. This is in consideration again of the fact that this issue is on appeal and the Property Manager is disputing the judgment. As you saw from previous emails, the Bharadwajas are not available to be present tomorrow. This is essentially an unnoticed request for inspection without authority, a chance to be present, or a chance to object.

> I will be required to file a notice with the county court and a motion for protective order if this is not immediately put on hold for discussion with me. Please respond.

In a series of emails between the parties' attorneys from October 3rd through November 6th, the attorneys discussed (1) the Bharadwajas' desire to know "what was going to happen with

---

[2] The justice of the peace judgment did not address the septic tank issue.

the water test, what kind of test was performed, and what, if any, materials would be used, essentially, what system" and (2) the Hayses' proposal for the inspection. Ryan stated he wanted this information to enable him to conduct his own research on whether the Hayses' proposal would solve the problem. Ryan agreed these emails indicated "six weeks of problems just because of scheduling." However, none of the correspondence concerned the Hayses repairing or remedying the problem. The emails concerned a technician coming to the property to "assess" the water filtration system for the property and provide a proposal.

On November 6th, Panda Pal emailed the Bharadwajas that a technician was scheduled for November 10th to replace the water filtration system. On November 14th, O'Brien arrived, not to install a filtration system, but instead to take another water sample. Ryan said he learned, for the first time, about the presence of arsenic in the water when O'Brien told him the levels were "very high." On November 16th, Ryan again took samples of the water for testing, which showed the presence of total coliform bacteria in the water. O'Brien installed the filtration system on November 16th, a few days before the county court trial commenced on November 20th.

## B. The Bharadwajas' testimony regarding the septic tank

Regarding the septic tank, both Ryan and Austin testified they did not know the house was on a septic tank until July 10th, a few days after they moved into the home.[3] On July 10th, the septic tank backed up into the house from a toilet, the contents running into the bathroom, hallway, and living room. After trying unsuccessfully to reach Panda Pal, the Bharadwajas called a plumber who came out that evening. The plumber determined the pipes were clogged by tree roots, but he also suspected there was a problem with the septic tank. The following day another plumber came to the house and determined the septic tank needed to be pumped. Panda Pal at first refused to

---

[3] On June 16th, Panda Pal informed the Bharadwajas that the property received its water from El Paso Water. Ryan stated that after contacting El Paso Water and discovering that it was not the service provider, he contacted Panda Pal to inquire about their water. On July 3rd, Panda Pal informed the Bharadwajas that the residence used well water.

pump the septic tank contending the Bharadwajas were responsible for repairs. Ryan said that, after speaking to the El Paso County Department of Public Works, a county inspector (Fermin Sosa) sent a Notice of Violation to Panda Pal.[4] Panda Pal pumped the septic tank on July 18th after receiving the notice.

On November 16th, about a week before the November 20th county court trial commenced, the septic tank again overflowed, this time into the backyard. Based on this new overflow, Austin believed Panda Pal merely pumped the septic tank but did nothing to fix the problem with the tank. On November 16th, Ryan contacted both Panda Pal and Sosa about the new overflow. Panda Pal had the septic tank pumped a second time on November 18th.

Due to the water contamination and the overflowing septic tank, the Bharadwajas stayed in a hotel from July 5th to July 18th and they purchased bottled water for their personal use. Ryan said the average hotel cost per night was approximately $142, and they were in a hotel for 13 nights. He believed the rental value of the residence was zero beginning on July 5th because of the lack of uncontaminated water and the backed-up septic system.

### C. The Bharadwajas' testimony regarding request for owners' address

On July 6th, the Bharadwajas asked Panda Pal to provide the owners' address. On July 13th, Panda Pal emailed the Bharadwajas the following address:

> In accordance with the tenant's previous request for disclosure of ownership information, we finally received the mailing address for the owners which is listed below. Taffy Bagley [the Hayses' attorney] is the recipient of correspondence on behalf of the owners.
>
> 4060 Faudree Rd Ste 104A, Odessa, TX 79765

---

[4] On July 17th, Sosa emailed the Bharadwajas to inform them as follows: "I just called and left a message. Please be advised that the property located at 949 Kelso is in violation of Texas Health & Safety Code Ch. 341.014(a). Please avoid the area of overflow. A Notice of Violation will be sent to Panda Pal Property Mgmt. Contact Panda Pal Property Mgmt that they need to pump out the tank within 24 hours and the area affected by the overflow needs to be disinfected. Please see attachment of the septic system sketch."

After receiving the address, the Bharadwajas mailed a packet of information detailing their problems with the house to the address provided by Panda Pal. They sent the information to the owners because they thought the owners might not be aware of what was happening. A message was later left on the voicemail of the Bharadwajas' attorney by a person identifying himself as a "Matthew Hays" who said he was not Michael Hays, and he had no knowledge of Kelso Street, the home's address.

### D. Elizabeth Hayses' testimony

Elizabeth Hays testified she and her husband purchased the property in 2020, lived in the house for a short time, and were not aware of any problems with the house. However, she said they were aware of the sulfuric smell when they moved into the house, but they had the water tested and were told it was "okay." When they decided to rent the house, they retained Panda Pal to manage the property. Hays said the Bharadwajas' initial complaints about the water concerned the sulfuric smell, but they later learned the Bharadwajas obtained test results showing other problems with the water, at which time the Hayses had Panda Pal contact a contractor (B&G Drilling and Pump Co. (B&G)) "to look at the water." After receiving bids from B&G, another contractor was hired to correct the problem.

Hays testified about an August 3rd email from her attorney to the Bharadwajas' attorney. The email stated, in part, as follows:

> Water Quality. On July 13, 2023 the tenants provided evidence of microbes present in water samples collected from the property. Upon receipt, management began working diligently to address this issue and called Home Water Services the same day. Home Water Services referred to a B&G Well Company as the property is supplied water from a private well. B&G Well company conducted their initial assessment of the property on Friday July 14, 2023. After their initial assessment B&G Well insisted further testing would be needed to outline the scope of work that needed to be done. B&G Well ordered testing supplies from a local environmental testing facility and returned to the property to collect samples on July 19, 2023. The samples were promptly submitted to testing facilities and B&G Well received the results from the lab on July 25, 2023. The tests confirmed a

presence for microbes. Upon confirmation B&G Well began to prepare a scope of work to include ordering supplies and contracting subcontractors needed to replace the water filtration system. B&G Well plans to submit the completed proposal on August 2, 2023. We are working diligently to see this to completion.

Hays said that although they did not contract with B&G to perform any work on the water filtration system, they worked diligently to complete the work. However, she admitted that although the justice of the peace court's September 8th judgment required them to fix the problem, they did not do so because they appealed the judgment. She agreed that the septic tank overflowing a second time only four months after it was pumped in July might indicate a problem that required more than mere pumping. As of the date of her testimony, they were "in the process of" having a technician inspect the pump.

Hays stated that the 4060 Faudree Road street address provided by Panda Pal was correct, but the suite number of 104A was a post office box. She admitted Panda Pal did not provide the Bharadwajas with their box number; instead, the box number provided by Panda Pal was number 104A and their box number was 431. Hays said she and her husband did not receive any correspondence directly from the Bharadwajas, and the man identifying himself as "Matthew Hays" who left the message on the voicemail of the Bharadwajas' attorney was not her husband.

### E. Panda Pal's testimony

Andrew Davis, Panda Pal's principal owner, testified that the email informing the Bharadwajas the property received its water from El Paso Water was sent to the tenants of all their properties and was not specific to any one property. He admitted Panda Pal knew the email contained erroneous information. Davis said he did not prevent the Bharadwajas from knowing how to contact the owners, and Panda Pal supplied the address it received.

Davis testified that beginning in July 2023 Panda Pal first attempted to locate the source of the sulfuric smell and then later had the water tested. Davis stated he received the Bharadwajas'

8

report, dated July 13th, which revealed the presence of bacteria. Panda Pal then contracted with B&G to perform its own testing and B&G later generated a report showing the presence of bacteria.

Once the contaminants were identified, Panda Pal contacted contractors who were experienced working with wells and obtained a proposal to remedy the issue for $16,000. When the Hayses said they could not afford that expenditure, they explored the idea of allowing the Bharadwajas to either move out, reduce their rent, or buy the property. Davis said that efforts to find a feasible solution continued even after the Bharadwajas filed suit in the justice of the peace court. At the end of September 2023, Davis had found a company that was experienced with wells, which could replace the system at half the price B&G quoted and they attempted to obtain access to the property for the company's specialist (O'Brien) on October 4th. Davis testified that "as soon as . . . [they] initially consulted [O'Brien] about going out there October 4th, [they] were met with resistance at each step of the way by [the Bharadwajas], who had been obstructive in a repeated pattern of being obstructive." Davis stated that the Bharadwajas would not allow access during reasonable hours and they insisted on access only before 8:00 a.m. and after 8:00 p.m." He said they were able to get onto the property only after the Bharadwajas' attorney was provided with written evidence via text message. According to Davis, "the attorneys going back and forth took about another two to three weeks."

Davis also stated that

> [i]n the meantime, we are talking to Andy [O'Brian] at the water company. He said, "If access is an issue, I can try to float this to some different suppliers so we can try to hammer out an estimate of what needs to" -- the equipment that he felt like it was appropriate for the situation. Again, that, you know, talking to different suppliers, that, you know, that took up some time. And I think it just speaks to the secondary and tertiary effects of someone not cooperative or obstructive, that it can really exacerbate the timeliness of the situation.
>
> .   .   .
>
> So after a couple weeks of the attorneys going back and forth, the bottom line was they wanted seven days' notice [to make an appointment to access the property].

9

And again, you know, we're working to get this done not only on our availability, but [the Bharadwajas'] availability that they insisted upon, but also the availability of contractors and materials. So we're not just dealing with one person to get this done.

In early November, Panda Pal emailed the Bharadwajas to inform them that Panda Pal was sending a contractor to perform the repair, but the Bharadwajas replied "something to the effect of, we can't facilitate. Come back in a week or so."

### F. Other testimony

Sosa testified he was an El Paso County inspector and "a designated representative for TCEQ, which designates environmental concerns and inspections of septic tanks and septic tank failures." He stated that the septic tank overflowing four months after it was pumped indicated the septic system was failing and pumping the tank was a stop-gap measure. O'Brien, the water filtration specialist, testified he was first contacted by Panda Pal in late September or early October 2023; he later provided Panda Pal with several options to correct the well water contamination, and he installed the system chosen by Panda Pal on November 16th.

### G. Trial court's judgment

Following the bench trial, the trial court ordered the Hayses (1) to take reasonable steps to inspect and ensure that all hazards to health or safety posed by the contaminated condition of the water at the rental property had been remedied, and take reasonable steps to provide assurance of their remedy to the Bharadwajas through certification providing test results from an accredited testing facility showing that the water does not contain harmful contaminants; (2) to take reasonable steps to ensure that the septic system for the property is in good working condition, and take reasonable steps to provide assurance of the septic system's good working condition to the Bharadwajas through certification providing evidence for the good working condition, and (3) to pay actual damages in the amount of $1,136 for hotel expenses, $10,000 in attorney's fees, post-

judgment interest, and court costs. The court reduced rent in the amount of $300 per month for the period of July 19, 2023, through October 3, 2023. On the Bharadwajas' failure to disclose claim, the trial court "[made] no order of relief in favor of" the Bharadwajas. The judgment made no mention of the Bharadwajas' request for civil penalties and stated "[a]ll relief not expressly granted herein is denied."

## II. AUTHENTICATION OF WATER TEST REPORTS

In their first cross-issue on appeal, the Hayses assert three reports (Exhibits 6A, 9, and 33) were improperly admitted by the trial court because the exhibits were not authenticated.[5] More specifically, the Hayses contend that because these reports were never supported by proper predicate testimony, no foundation was laid and the reports were not self-authenticated, it was not shown that the reports were reliable.[6]

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). "Testimony that an item is what it is claimed to be" is one example of a method by which a document may be authenticated. *Id.* at 901(b)(1).

Exhibits 6A and 33 are preprinted forms from the City of El Paso Department of Public Health Laboratory entitled "TCEQ Microbial Reporting Form." Ryan said he "filled out [Exhibit

---

[5] Although the Hayses did not object to these exhibits on authentication grounds in the trial court, they argue they may raise the issue of a complete absence of authentication for the first time on appeal. An attempted, but improper, authentication is a defect of form while the complete absence of authentication is a defect of substance, that may be urged for the first time on appeal. *Arnold v. Life Partners, Inc.*, 416 S.W.3d 577, 590 (Tex. App.—Dallas 2013), *aff'd*, 464 S.W.3d 660 (Tex. 2015); *Gunville v. Gonzales*, 508 S.W.3d 547, 568 (Tex. App.—El Paso 2016, no pet.).

[6] The Hayses also contend admission of these exhibits was not harmless because "whether a given level of coliform bacteria, chemical presence, or odor-producing compound poses such a risk is a scientific question that lies within the domains of microbiology, toxicology, and environmental medicine—not lay perception." According to the Hayses, the trial record contains no scientific analysis, expert testimony, interpretation of lab results, explanation of EPA standards, quantification of contamination levels in relation to health-based thresholds, and no testimony or evidence ruling out other potential causes for the symptoms described, such as diet, seasonal illness, pre-existing medical conditions, or unrelated environmental factors. This argument is without merit because the exhibits were not admitted for the purpose of showing any health-related risks. As the Hayses concede, these exhibits were admitted for the purpose of showing the water well was contaminated with coliform bacteria.

6A] in order for the water test to be completed" and it showed "the results of the kitchen faucet with total coliform being present." Ryan identified Exhibit 33 as the "test report [he] received . . . from the County of El Paso in regards to our water test." He testified that the report showed he "took two samples, one from the kitchen, that everyone has been pulling samples from, and another one from the half bath, which is located downstairs. And both of those came back for total coliform and they failed the water test again." Both Exhibit 6A and 33 show the presence of coliform. Regarding Exhibit 9, Ryan testified the exhibit was a page from the B&G report, also showing the presence of coliform and arsenic.

We conclude the three exhibits were properly authenticated based on Ryan's testimony that the items were what they "claimed to be." *See id.* 901(b)(1). Furthermore, even if one or more of the exhibits were not properly authenticated, the same evidence—the presence of coliform in the water—was undisputed and admitted without objection. Ryan testified Panda Pal's own testing showed the presence of total coliform bacteria in the water. An email from the Hayses' attorney to the Bharadwajas' attorney stated, in part, that B&G "ordered testing supplies from a local environmental testing facility and returned to the property to collect samples on July 19, 2023[;] [t]he samples were promptly submitted to testing facilities and B&G Well received the results from the lab on July 25, 2023[;] [t]he tests confirmed a presence for microbes." Davis testified he received the Bharadwajas' report, dated July 13th, which revealed the presence of bacteria; Panda Pal then contracted with B&G to perform its own testing; and B&G later generated a report showing the presence of bacteria.

For these reasons, we overrule the Hayses' first cross-issue. We next turn to the merits of the Bharadwajas' issues and the Hayses' cross-issues related to the Bharadwajas' repair or remedy claims, which all involve challenges to the sufficiency of the evidence.

12

## III. STANDARD OF REVIEW

The trial court did not make findings of fact and conclusions of law; therefore, all facts necessary to support the judgment and that are supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Escalante v. Escalante*, 632 S.W.3d 573, 578 (Tex. App.—El Paso 2020, no pet.). However, when, as here, the appellate record includes the clerk's and reporter's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence. *Marchand*, 83 S.W.3d at 795. We apply the same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

We defer to the factfinder's determination of the credibility of the witnesses and the weight of their testimony. *Kiehne v. Jones*, 247 S.W.3d 259, 263 (Tex. App.—El Paso 2007, pet. denied). We may not substitute our judgment for that of the factfinder. *Arcides v. Rojas*, 677 S.W.3d 154, 159 (Tex. App.—El Paso 2023, no pet.).

### A. Legal sufficiency of the evidence

When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We first examine the record for evidence that supports the trial court's finding and ignore all other evidence to the contrary. *Id.* Only where there is no evidence supporting the trial court's finding will the remainder of the record be examined to determine whether the opposite of the court's finding is established as a matter of law. *Id.* If the contrary to the trial court's finding is "conclusively established," we will sustain the point of error. *Id.*

13

When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We will sustain a legal sufficiency challenge if "the evidence offered to prove a vital fact is no more than a scintilla." *Id.* (citations omitted). In conducting our review, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Id.* (citation omitted). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

## B. Factual sufficiency of the evidence

When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, they must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. We must consider and weigh all the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* If a party attacks the factual sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that the finding is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## IV. LANDLORD'S DUTY TO REPAIR OR REMEDY

The Bharadwajas brought two failure to repair or remedy claims against the Hayses: one for the contaminated water supply on the property and one for the backed-up septic tank. As applicable here, a "landlord shall make a diligent effort to repair or remedy a condition if:"

(1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid;

(2) the tenant is not delinquent in the payment of rent at the time notice is given; and

(3) the condition . . . materially affects the physical health or safety of an ordinary tenant[.]

Tex. Prop. Code Ann. § 92.052(a). A "tenant has the burden of proof in a judicial action to enforce a right resulting from the landlord's failure to repair or remedy a condition under Section 92.052." *Id.* § 92.053(a).

Property Code § 92.056 sets forth the procedures tenants and landlords must follow regarding conditions that need to be repaired or remediated on leased premises. *See id.* § 92.056(b). A landlord is liable to a tenant as provided by this subchapter if:

(1) the tenant has given the landlord notice to repair or remedy a condition by giving that notice to the person to whom or to the place where the tenant's rent is normally paid;

(2) the condition materially affects the physical health or safety of an ordinary tenant;

(3) the tenant has given the landlord a subsequent written notice to repair or remedy the condition after a reasonable time to repair or remedy the condition following the notice given under Subdivision (1) or the tenant has given the notice under Subdivision (1) by sending that notice by certified mail, return receipt requested, by registered mail, or by another form of mail that allows tracking of delivery from the United States Postal Service or a private delivery service;

(4) the landlord has had a reasonable time to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1) and, if applicable, the tenant's subsequent notice under Subdivision (3);

(5) the landlord has not made a diligent effort to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1) and, if applicable, the tenant's notice under Subdivision (3); and

(6) the tenant was not delinquent in the payment of rent at the time any notice required by this subsection was given.

*Id.* § 92.056(b).

A tenant to whom a landlord is liable under § 92.056(b) may, among other remedies, obtain judicial remedies. *Id.* § 92.056(e)(4); *Am. Campus Communities, Inc. v. Berry*, 667 S.W.3d 277,

15

287 (Tex. 2023) ("Section 92.056(b) provides: 'A landlord is liable to a tenant as provided by this subchapter if' the requirements of subsections (b)(1) through (b)(6) are satisfied."). A tenant's judicial remedies "shall include" a judgment: (1) directing the landlord to take reasonable action to repair or remedy the condition; (2) reducing the tenant's rent, from the date of the first repair notice, in proportion to the reduced rental value resulting from the condition until the condition is repaired or remedied; (3) for a civil penalty of one month's rent plus $500; (4) for the amount of the tenant's actual damages; and (5) for court costs and attorney's fees, excluding any attorney's fees for a cause of action for damages relating to a personal injury. Tex. Prop. Code Ann. § 92.0563(a).

## V.   REDUCTION IN RENT

Under the Bharadwajas' claim for failure to repair or remedy the contaminated water on the property, the trial court awarded the Bharadwajas a reduction in their rent "in the amount of $300 per month for the period of July 19, 2023 through October 3, 2023, which equals $754.83." Following closing arguments, the court explained its rent reduction award as follows:

> And with respect to the issues with respect to the water contamination, I find that because of the water contamination, there should be a reduction in rent for the time while the Bharadwajas were there. . . . But as I had indicated, I am granting a reduction in rent amount for the months -- not for all the months -- while this was pending. But I'm granting a reduction in rent of $300 per month, and that amount is from July 19th through October 3rd. July 19th is the day, I believe, they came back from the hotel where they were staying.
>
> .     .     .
>
> October 3rd, I believe, is when some movement was made towards remedying the situation with the water. It doesn't mean that other -- I do believe that the landlord was making efforts to try to address this problem and fix the problem. I do believe that there was some delay in addressing and fixing the problem because of difficulties in accessing the property. And I think some of those problems were related to the ongoing litigation. And I don't think -- I'm not going to hold the landlord responsible for those issues that arose because of the ongoing litigation.

16

So I'm ordering a rent reduction of $300 from July 19th to October 3rd. I'm not sure what that amount works out to. I hadn't worked it out yet. I hadn't calculated that amount yet.[7]

In its written judgment, the trial court ordered a rent reduction from July 19th[8] through October 3rd.

In their first issue on appeal, the Bharadwajas assert that, although the trial court correctly awarded a reduced rent, it arbitrarily limited the reduction through October 3rd, despite uncontroverted evidence showing that the complained-of condition was not remedied until November 16th. In their second and third cross-issues, the Hayses counter that no rent reduction was warranted because (1) there is no evidence or insufficient evidence of a material defect that affected the Bharadwajas' physical health, (2) there is no evidence or insufficient evidence that they did not act diligently and in good faith to address any alleged habitability issues, and (3) there is no evidence or insufficient evidence of diminished rental value.[9]

### A. Applicable law

"A landlord shall make a diligent effort to repair or remedy a condition if," among other things, "the condition . . . materially affects the physical health or safety of an ordinary tenant[.]" *Id.* § 92.052(a)(3)(A). Before obtaining the judicial remedy of a reduction in rent, the Bharadwajas had to establish six prerequisites to hold the Hayses liable on the Bharadwajas' claim for failure to remedy or repair the water contamination on the property, including that "the condition materially affects the physical health or safety of an ordinary tenant" and the "landlord has not

---

[7] This resulted in a reduction in rent from $2,800 per month to $2,500 per month.

[8] On appeal, the Bharadwajas do not challenge the July 19th date.

[9] In their second cross-issue, the Hayses also assert the Bharadwajas failed to mitigate their damages. Because this complaint focuses only on the award of hotel expenses, it is discussed later in the opinion.

17

made a diligent effort to repair or remedy the condition after the landlord received the tenant's notice[.]"[10] *Id.* § 92.056(b)(2), (5).

### B. Materially affects the physical health or safety of an ordinary tenant

We construe the Hayses' complaint that there is no evidence or insufficient evidence of a material defect that affected the Bharadwajas' physical health as a challenge to the sufficiency of the evidence in support of the trial court's implied finding that the presence of contaminated water on the property materially affected the health of an ordinary tenant. As support for their contention, the Hayses assert the Bharadwajas relied on "subjective testimony from [Ryan], who claimed to have experienced nausea and diarrhea several days after smelling a sulfuric odor in the water." The Hayses contend the Bharadwajas presented no medical records or expert testimony to establish causation.[11]

The Hayses provide no authoritative support for their argument that §§ 92.052 and 92.056 contain a causation requirement or that those sections require proof that the tenant's health or safety was materially affected. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 755 (Tex. 1998) ("subchapter B was intended to govern disputes between a landlord and a tenant over repairs and not liability for personal injuries resulting from premises defects actionable under the common law"); *cf. Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("Expert testimony is particularly necessary in chemical-exposure [personal injury] cases, in which medically complex diseases and causal ambiguities compound the need for expert testimony."). Instead, §§ 92.052 and 92.056 require proof that the

---

[10] On appeal, the Hayses do not raise a specific, express challenge to the trial court's implied finding(s) that the Bharadwajas satisfied any statutorily required notice provision.

[11] The Hayses also contend that, although Ryan referenced partial lab results showing the existence of total coliform and a partial report from B&G, Ryan admitted he was not a water filtration expert and did not provide any chain-of-custody validation or the complete report. The reports showing the presence of coliform in the water is unrelated to whether the presence of coliform materially affected the health of an ordinary tenant.

18

complained-of condition materially affects the physical health or safety of "an ordinary tenant." Tex. Prop. Code Ann. §§ 92.052(a)(3)(A); 92.056(b)(2).

In its judgment, the trial court ordered the Hayses to take reasonable steps to remedy "all hazards to health or safety posed by the *contaminated condition of the water* at the rental property[.]" On appeal, the Hayses do not challenge the sufficiency of the evidence in support of the court's implied finding that the "condition" to be repaired or remedied was the existence of contaminated water.[12] Both Ryan and Elizabeth Hays testified to the sulfuric smell emanating from the water. Ryan's testimony that he experienced nausea, diarrhea, a stomachache, and sweats was not challenged at trial.

Deferring to the trial court's assessment of the credibility of the witnesses and the weight to be afforded their testimony, the evidence supporting the trial court's implied finding that the contaminated water on the property materially affected "the physical health or safety of an ordinary tenant" is both legally and factually sufficient. *See Lost Creek Ventures, LLC v. Pilgrim*, No. 01-15-00375-CV, 2016 WL 3569756, at *5–6 (Tex. App.—Houston [1st Dist.] June 30, 2016, no pet.) (mem. op.) (appellate court concluded evidence supporting trial court's findings that the Epsteins failed to adequately repair a condition materially affecting Pilgrim's health and safety in violation of the landlord-tenant statute and that Pilgrim properly terminated the lease based on this violation was not so weak as to make them clearly wrong and manifestly unjust).[13] Therefore, we overrule,

---

[12] Findings of fact shall not be recited in a judgment but, rather, shall be stated in a separate document. Tex. R. Civ. P. 299a. Nevertheless, "[f]indings contained in a judgment can be given probative value on appeal when the court does not issue any separate conflicting findings of fact and conclusions of law." *Howe v. Howe*, 551 S.W.3d 236, 247 (Tex. App.—El Paso 2018, no pet.). In addition, if no party objects in the trial court to the inclusion of findings in the judgment, the appellate court may accept those findings (insofar as they do not conflict with any separately filed findings) for purposes of the appeal. *See id.* at 247 (failure to object); Tex. R. Civ. P. 299a (if findings in judgment conflict with separate findings, separate findings control).

[13] In *Lost Creek Ventures, LLC v. Pilgrim*, No. 01-15-00375-CV, 2016 WL 3569756, at *5–6 (Tex. App.—Houston [1st Dist.] June 30, 2016, no pet.), Pilgrim testified he asked the landlord to hire an exterminator after he found rat droppings in the water closet in the back bedroom. He described that area as "inundated with rat feces," which caused

19

in part, the Hayses' second cross-issue as it relates to whether the evidence was sufficient to support the trial court's implied finding that a "condition" on the property materially affected "the physical health or safety of an ordinary tenant."

## C. Diligent effort by the Hayses

The Hayses next assert there is no evidence or insufficient evidence that they did not act diligently and in good faith to address any alleged habitability issues.

Although § 92.056 does not require that the landlord successfully repair or remedy a materially harmful condition, it does require a "diligent effort." *Hamaker v. Newman*, No. 02-19-00405-CV, 2022 WL 714554, at *13 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (mem. op.) (citing Tex. Prop. Code Ann. § 92.056(b)(5)). Subsection (b)(4) of § 92.056 provides that a landlord is liable to a tenant if "the landlord has had a reasonable time to repair or remedy the condition after the landlord received the tenant's notice" under subsection (b)(1) and, if applicable, the tenant's notice under subsection (b)(3). Tex. Prop. Code Ann. § 92.056(b)(4). Subsection (b)(5) of § 92.056 provides that a landlord is liable to a tenant if "the landlord has not made a diligent effort to repair or remedy the condition after the landlord received the tenant's notice" under subsection (b)(1) and, if applicable, the tenant's notice under subsection (b)(3). *Id.* § 92.056(b)(5).

In "determining whether a period of time is a reasonable time to repair or remedy a condition, there is a rebuttable presumption that seven days" after the date the landlord receives the tenant's notice under subsection (b)(1) and, if applicable, the tenant's subsequent notice under subsection (b)(3), is a reasonable time. *See id.* § 92.056(d). To rebut that presumption, "the date on which the landlord received the tenant's notice, the severity and nature of the condition, and

_____

an odor problem. Pilgrim testified he could not use the laundry or common area due to "the smell of rat urine and feces" and that there was "a stench in the house." The attic also showed evidence of infestation.

the reasonable availability of materials and labor and of utilities from a utility company must be considered." *Id.* Ordinarily, whether a party exercised diligence is a question of fact. *Bismar v. Mitchell*, No. 05-21-00104-CV, 2023 WL 545512, at *6 (Tex. App.—Dallas Jan. 27, 2023, no pet.) (mem. op.).

### (1) July 19th through October 3rd

The Bharadwajas first reported the sulfuric smell to Panda Pal on July 5th and reported that the water was not potable on July 8th. Panda Pal responded that the water "was fine." Ryan said, "for our own safety, we shouldn't be staying in the house," and they stayed at the hotel from July 5th until July 18th. The Bharadwajas had the water tested by the County of El Paso and received the results showing the presence of coliform in the water on July 13th. On that same date, the Bharadwajas emailed Panda Pal again notifying it about the "foul smell from the water," informing it that the water "failed the City's water test," and providing a copy of the test results showing the presence of coliform in the water.

On July 19th, B&G collected water samples and submitted them for testing. On July 25th, Panda Pal received the results, which also revealed the presence of coliform in the water. Rather than remediate the problem, the Hayses informed the Bharadwajas, on August 4th, that they could not afford the remediation and repair and offered the Bharadwajas the opportunity to terminate the lease or purchase the property. The Bharadwajas sued Appellees in the justice of the peace court on August 17th. In its September 8th judgment, the justice of the peace court ordered the Hayses "to take reasonable action to repair and remedy the condition of contaminated water" on the property. Despite the order, the Hayses took no action until October 3rd. On October 3rd, Panda Pal informed the Bharadwajas that a water filtration technician would go to the property on October 4th "for another assessment regarding the filtration system on the property." Because the

21

Bharadwajas would be out-of-town, they asked that the appointment be rescheduled for the next week.

Deferring to the trial court's assessment of the credibility of the witnesses and the weight to be afforded to their testimony, we conclude this evidence is both legally and factually sufficient to support the trial court's implied findings that from the date of the Bharadwajas' notice through October 3rd, the Hayses had a reasonable time to repair or remedy the condition but failed to make "a diligent effort to repair or remedy the condition after the landlord received the tenant's notice[.]" *See* Tex. Prop. Code Ann. § 92.056(b)(5). Therefore, we overrule the Hayses' second cross-issue as it relates to the trial court's implied finding that the Bharadwajas were entitled to a rent reduction during the period of July 19th through October 3rd.

### (2) October 4th through November 16th

Scheduling delays, many caused by the Bharadwajas, delayed the Hayses' access to the property for the purpose of assessing the water filtration system. The Hayses tried as early as October 3rd to schedule a water filtration technician to go to the property. On that same date, the Bharadwajas' attorney expressed concerns that "this [would] interfere with [the] case on appeal" to the county court, and he asked for a variety of "representations consistent with the fact that the water quality [was] a driving subject of the appeal[.]" In a series of emails between the parties' attorneys from October 3rd through November 6th, the parties' attorneys discussed (1) the Bharadwajas' desire to know "what was going to happen with the water test, what kind of test was performed, and what, if any, materials would be used, essentially, what system" and (2) the Hayses' proposal for the inspection. Ryan agreed these emails indicated "six weeks of problems because of scheduling." Davis explained that the scheduling difficulties they experienced affected the availability of contractors and materials.

Deferring to the trial court's assessment of the credibility of the witnesses and the weight to be afforded to their testimony, we conclude this evidence is both legally and factually sufficient to support the trial court's implied finding that the Bharadwajas played a part in delaying the Hayses' efforts from October 4th through November 16th. Therefore, we conclude the evidence allowed the trial court to reasonably infer that a reduction in the Bharadwajas' rent "for the period of July 19, 2023 through October 3, 2023" was appropriate given the delays caused, at least in part, by the Bharadwajas between October 4th and November 16th. Accordingly, (1) we overrule the Bharadwajas' first issue and (2) we sustain the Hayses' second issue as it relates to the trial court's implied finding that the Bharadwajas were not entitled to a rent reduction during the period of October 4th through November 16th.

**D. Diminished rental value**

Although we conclude the evidence supports the trial court's implied finding that the Bharadwajas were entitled to a rental reduction during the period of July 19th through October 3rd, we must also consider the Hayses' cross-issue related to the amount of the reduction.

Among the judicial remedies available to a prevailing tenant is "an order reducing the tenant's rent, from the date of the first repair notice, in proportion to the reduced rental value resulting from the condition until the condition is repaired or remedied[.]" Tex. Prop. Code Ann. § 92.0563(a)(2). The Hayses assert there is no evidence or insufficient evidence of a decrease in the property's rental value during the period for which the trial court awarded rent reduction. According to the Hayses, in the absence of any evidence of diminished rental value, the trial court's award is speculative because rent reduction must be based on actual diminution in rental value. The Bharadwajas counter that § 92.0563(a)(2) does not require expert appraisals, formal market studies, or precise economic valuations to prove that the rental value has been diminished. Instead,

23

they contend § 92.0563(a)(2) contemplates an equitable adjustment based on the diminished habitability and usefulness of the premises.

Even if we were to agree with the Bharadwajas' argument, the amount by which the trial court reduced the rent must be based on a calculation of some sort. *See id.* § 92.0563(a)(2) (requiring reduction in rent to be "in proportion to" "reduced rental value"); *cf. Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 712 (Tex. 2016) ("Damage estimates . . . cannot be based on sheer speculation."); *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 677 (Tex. 2016) ("Although mathematical exactness is not required, the evidence offered must rise above the level of pure conjecture."); *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 277 (Tex. 2004) ("As with other types of damages, the future effects of a nuisance do not have to be established with perfect accuracy. But there must be competent evidence that establishes them with reasonable certainty.")

Here, the record provides no basis for the $300 per month reduction in rent and there is no evidence of how this reduced amount equates to a "reduced rental value resulting from the condition." Therefore, we must conclude the $300 rent reduction was based on "sheer speculation" and amounts to "no evidence." *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (noting that no-evidence point will be sustained when evidence offered to prove vital fact amounts to no more than a mere scintilla). Accordingly, we sustain the Hayses' third issue that there is no evidence to support the trial court's award of a $300 reduced rent based on diminished rental value.

## VI.  AWARD OF HOTEL EXPENSES

Under the Bharadwajas' claim for failure to repair or remedy the septic tank, the trial court awarded the Bharadwajas actual damages in the amount of $1,136 for hotel expenses. As a sub-issue of their second cross-issue on appeal, the Hayses assert there is no evidence or insufficient

evidence that the Bharadwajas mitigated their damages related to the hotel expenses. In their fourth cross-issue, the Hayses assert the trial court erred because there was no evidence to support this award.[14]

The Hayses contend the Bharadwajas vacated the property on July 5th for safety reasons and then vacated the property July 10th through July 18th due to the septic tank issues. However, according to the Hayses, the septic tank had been pumped by July 13th. The Hayses contend the Bharadwajas voluntarily chose to remain in a hotel until July 18th, incurring additional hotel expenses and this voluntary decision to stay in the hotel, after the septic tank was remediated, was not a result of any ongoing failure by them. As such, they argue the Bharadwajas cannot recover for damages that could have been reasonably avoided. They also assert there is no evidence to substantiate the hotel expenses. Finally, the Hayses contend the Bharadwajas did not consider the property as uninhabitable because they "lik[ed] the house" and briefly considered buying it.

The Hayses' contention that the septic tank was pumped on July 13th is not supported by the record. Instead, the record indicates the septic tank was pumped on July 18th. Furthermore, Ryan's testimony that they stayed in a hotel from July 5th to July 18th due to the water contamination and the overflowing septic tank, that the average hotel cost per night was approximately $142, and the total hotel expense "came out to . . . around $1800" was not challenged by the Hayses at trial.[15] Given the trial court's responsibility for judging the

---

[14] The only judicial remedies requested by the Bharadwajas under their claim that the Hayses failed to repair or remedy the backed-up septic tank were their actual damages, a civil penalty, and costs and attorney's fees. On appeal, the Hayses do not challenge the sufficiency of the evidence in support of the trial court's implied findings that the Bharadwajas satisfied the statutory prerequisites that would entitle them to recovery of their actual damages under this claim.

[15] During closing arguments, the Bharadwajas' counsel explained the lack of documentary evidence because the Bharadwajas used points to pay for some of the nights; therefore,

> the hotel couldn't give them full receipts for every single day they were there. So Mr. Ryan Bharadwaja just averaged his total cost, including what it would have been. Well, in effect what it was, because he had to use his own points to buy some of those nights. He used the points. I will freely admit to Your Honor this is not in evidence. He used the points because he didn't know when

Bharadwajas' credibility, the absence of controverting evidence, and our standard of review on appeal, we conclude the trial court's implied finding that Ryan's undisputed testimony established the hotel expenses with reasonable certainty is supported by legally sufficient evidence. *See City of Keller*, 168 S.W.3d at 820 (holding factfinder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted"); *Arreola v. Union Pac. R.R.*, 657 S.W.3d 789, 800 (Tex. App.—El Paso 2022, no pet.) (same). Therefore, we overrule the Hayses' second and fourth cross-issues as those issues relate to the award of hotel expenses.

## VII.  AWARD OF CIVIL PENALTIES

The trial court's judgment does not mention, much less award, civil penalties in favor of the Bharadwajas. In their first issue, the Bharadwajas assert that because they were the prevailing parties on their two repair or remedy claims, the trial court was required to award them a civil penalty of one month's rent plus $500 under Property Code § 92.0563(a)(3). The Hayses counter that the Bharadwajas: (1) waived this complaint because they did not cite to the appellate record demonstrating the statutory prerequisites of notice, reasonable opportunity to repair, a material effect on their health or safety, and that their rent was current; (2) failed to establish the statutory prerequisites necessary to trigger civil penalties; and (3) provided no authority to support their interpretation of the statute as requiring such an award. We first address the Bharadwajas' argument that the statutory language mandates a civil penalty.

### A.  Statutory construction

"A tenant's judicial remedies under Section 92.056 *shall* include[,] [among other remedies] . . . a judgment against the landlord for a civil penalty of one month's rent plus $500[.]" Tex. Prop.

---

they were going to get into the house, basically. They thought, oh, it might be a short stay, or it might not be a short stay, but we don't want to be out-of-pocket. That was the reason for that.

Code Ann. § 92.0563(a)(3) (emphasis added). the Bharadwajas assert the statute's use of the word "shall" indicates the mandatory nature of a civil penalty award.

Statutory construction is a question of law that we review de novo. *Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 23 (Tex. 2021). Our goal is to effectuate the Legislature's intent as indicated in the statute's text. *Id.* We determine the meaning of a statutory provision by looking to the statute as a whole and not by considering it in isolation. *Id.* at 23–24. We presume the Legislature intended every word in a statute and purposefully omitted words not included. *Id.* at 24. We apply definitions as supplied by the statute, but we interpret an undefined term according to its plain meaning unless a different meaning is apparent from context, or the plain meaning would lead to absurd results. *Id.*; *Harris Cnty. Appraisal Dist. v. Consol. Cap. Properties IV*, 795 S.W.2d 39, 41 (Tex. App.—Amarillo 1990, writ denied) ("In statutory construction, it is assumed that the ordinary meaning of the words used expresses the legislative intent."); Tex. Gov't Code Ann. § 312.002(a) (with an exception that does not apply here, "words shall be given their ordinary meaning").

## B. Analysis

We first look at the plain language of the statute, which states that a tenant's judicial remedies "shall include," among other remedies, "a judgment against the landlord for a civil penalty of one month's rent plus $500[.]" Tex. Prop. Code Ann. § 92.0563(a)(3); *see Am. Campus Communities*, 667 S.W.3d at 287 ("[s]ection 92.0563 attaches a civil penalty to '[a] tenant's judicial remedies under Section 92.056.'"). When "shall" is used in a statute it "generally indicates the Legislature's intent that the directive is mandatory." *Boerne to Bergheim Coal. for Clean Env't v. Texas Comm'n on Env't Quality*, 657 S.W.3d 382, 391 (Tex. App.—El Paso 2022, no pet.); *Harris Cnty. Appraisal Dist.*, 795 S.W.2d at 41 ("The ordinary meaning of 'shall' or 'must' is a mandatory effect."); *see* Tex. Gov't Code Ann. § 311.016(1)–(3) (explaining that "may" creates

discretionary authority or grants permission or a power; "shall" imposes a duty; and "must" creates or recognizes a condition precedent and that these constructions apply "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute"). Nothing in § 92.0563(a) indicates the Legislature intended a deviation from the plain meaning of the word "shall" and its usual mandatory application. "We therefore find it is appropriate to treat it as such in this instance." *Boerne*, 657 S.W.3d at 391; *see also Wichita Cnty., Texas v. Hart*, 917 S.W.2d 779, 783 (Tex. 1996) (noting "a statute containing the unmistakably mandatory phrase 'shall bring suit.'").

Having identified the plain meaning of the word "shall" as mandatory in nature, we next consider the context in which the word appears within § 92.0563(a) and the statute as a whole. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 565 (Tex. 2014); *Boerne*, 657 S.W.3d at 393. We begin our review by acknowledging that the Legislature has set out a "comprehensive scheme" in Property Code Chapter 92 "governing residential tenancies, including a balanced and workable system for landlords and tenants to resolve disputes about habitability." *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 377 (Tex. 2001) (Hankinson, J., dissenting). Chapter 92, subchapter B, provides more specific minimum standards of habitability, a method for enforcing those standards, and remedies for a landlord's failure to meet those standards. *Timberwalk Apartments*, 972 S.W.2d at 755; *Churchill Forge*, 61 S.W.3d at 376. "The duties of a landlord and the remedies of a tenant under this subchapter are in lieu of existing common law and other statutory law warranties and duties of landlords for maintenance, repair, security, habitability, and nonretaliation, and remedies of tenants for a violation of those warranties and duties." Tex. Prop. Code Ann. § 92.061. With exceptions that do not apply here, a "landlord's duties and the tenant's remedies under Subchapter B [§§ 92.051–.062], which covers conditions materially affecting the physical health or safety of the ordinary tenant may not be waived[.]" *Id.* § 92.006(c).

28

Subchapter B, § 92.056(b) sets forth six prerequisites that a tenant must establish before a landlord is liable, and once liability is established, the tenant may exercise any of the four remedies set forth in § 92.056(e).[16] *See id.* § 92.056(b), (e). Among these remedies is the right "to obtain judicial remedies according to Section 92.0563." *Id.* § 92.056(e)(4). Section 92.0563 lists five judicial remedies connected by the conjunctive "and." *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 725 (Tex. 2024) (recognizing "that the conjunctive 'and' is rarely interchangeable with the disjunctive 'or.'"). We conclude interpreting the word "shall" as mandatory is consistent with the Legislature's intent to provide specific remedies for a landlord's noncompliance with their statutory duties. Finally, the Hayses identify no absurd results that flow from our interpretation of the word "shall." The Hayses concede that after the § 92.056(b) "elements are fully established . . . the 'shall' in § 92.0563(a) come into play."

## C. Conclusion

Having identified the common meaning of the word "shall" as indicating the Legislature's intent that the directive is mandatory and having determined that the context of this term supports this common meaning, we conclude § 92.0563(a)(3) mandates the award of a civil penalty if the statutory prerequisites are satisfied. Based on our disposition of the above issues and cross-issues, we conclude the Bharadwajas were entitled to the judicial remedy of a judgment for a civil penalty for each repair or remedy claim. *Id.* § 92.0563(a)(3). Accordingly, we sustain the Bharadwajas' first issue.

---

[16] "Except as provided in Subsection (f) [termination of lease], a tenant to whom a landlord is liable under Subsection (b) of this section may: (1) terminate the lease; (2) have the condition repaired or remedied according to Section 92.0561; (3) deduct from the tenant's rent, without necessity of judicial action, the cost of the repair or remedy according to Section 92.0561; and (4) obtain judicial remedies according to Section 92.0563." Tex. Prop. Code Ann. § 92.056(e).

## VIII. THE BHARADWAJAS' FAILURE TO DISCLOSE CLAIM

The Bharadwajas contended the Hayses failed or refused to provide the owners' accurate address as required by Property Code § 92.201(a)(1). The trial court's final judgment stated, "[t]he Court makes no order of relief in favor of" the Bharadwajas on this claim. In their second issue, the Bharadwajas contend the Hayses' failure to disclosure the owner's P.O. Box address amounted to a bad faith violation because the Hayses willfully disclosed incorrect information or failed to correct the information they knew to be inaccurate. We construe the Bharadwajas' complaint as a challenge to the factual sufficiency of the evidence in support of the trial court's implied finding that the Bharadwajas did not satisfy the statutory requirements entitling them to any of the remedies listed in § 92.205(a).[17]

### A. Applicable law

A landlord "shall disclose" to a tenant:

(1) the name and either a street or post office box address of the holder of record title, according to the deed records in the county clerk's office, of the dwelling rented by the tenant . . .; and

(2) if an entity located off-site from the dwelling is primarily responsible for managing the dwelling, the name and street address of the management company.

Tex. Prop. Code Ann. § 92.201(a). A landlord is liable to a tenant for failure to disclose if:

(1) after the tenant . . . makes a request for information under Section 92.201, the landlord does not provide the information; and

(2) the landlord does not give the information to the tenant . . . before the eighth day after the date the tenant . . . gives the landlord written notice that the tenant . . . may exercise remedies under this subchapter if the landlord does not comply with the request by the tenant . . . for the information within seven days.

---

[17] On appeal, the Bharadwajas do not specifically contend the evidence is either legally or factually insufficient. However, they urge a factual sufficiency review by asserting this Court must consider "all the evidence, both that in support of and contrary to the challenged finding, to determine if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust."

*Id.* § 92.202(a).

Under § 92.204, a landlord acts in bad faith and is liable for failure to disclose "if the landlord gives an incorrect name or address under Subsection (a) of Section 92.201 by willfully:"

(1) disclosing incorrect information under Section 92.201(b)(1) or (2) or Section 92.201(d); or

(2) failing to correct information given under Section 92.201(b)(1) or (2) or Section 92.201(d) that the landlord knows is incorrect.

*Id.* § 92.204.

A tenant's remedies for a landlord's failure to disclosure "may" include "one or more" of the following:

(1) a court order directing the landlord to make a disclosure required by this subchapter;

(2) a judgment against the landlord for an amount equal to the tenant's actual costs in discovering the information required to be disclosed by this subchapter;

(3) a judgment against the landlord for one month's rent plus $100;

(4) a judgment against the landlord for court costs and attorney's fees; and

(5) unilateral termination of the lease without a court proceeding.

*Id.* § 92.205(a).

### B. Analysis

On the afternoon of July 5th, Ryan emailed Panda Pal and stated, "By law[,] you are required to provide us an address to submit written correspondence directly to the owner[.] Please provide this information as we would like to send them a letter." That evening, Ryan again asked for the owners' contact information. On July 6th, Ryan emailed Panda Pal with the following request: "In addition, Panda is legally required to provide an address and contact information of the owner. Provide this information today. We will be contacting the owners." A few minutes later, Panda Pal responded with the following question: "Just curious[,] which statute are you referring

to where the property manager has to supply you with the owner's contact information?" Ryan responded by providing the citation to § 92.201 and quoting the statute.

Although Ryan requested the owners' contact information and provided Panda Pal with the statutory authority supporting his request, the record contains no indication the Bharadwajas provided Panda Pal with "written notice that [they] may exercise remedies under this subchapter if [Panda Pal did] not comply with the request . . . for the information within seven days." *See* Tex. Prop. Code Ann. § 92.202(a). Therefore, the Bharadwajas did not comply with the condition precedent for recovery under § 92.202(a)(2)(a). *See McBeath v. Estrada Oaks Apartments*, 135 S.W.3d 694, 697 (Tex. App.—Dallas 2003, no pet.) (holding McBeath substantially complied with the condition precedent for recovery under § 92.202(a)(2) because she notified Estrada Oaks of the consequence of its failure to respond by stating in two letters "that if she did not receive the information within seven days, she 'may take legal action.'").

Furthermore, even if the record supports a finding that Panda Pal disclosed an incorrect address, there is no evidence in the record that it "willfully" disclosed or failed to correct incorrect information. When Davis was asked whether the address he provided was the address "you were given by the owners," he replied, "[w]e supplied the address that we received." He said they supplied the address within seven days of the Bharadwajas' request and Panda Pal did not attempt to prevent the Bharadwajas from knowing how to reach the owners.

We conclude the Bharadwajas did not carry their burden of showing that the adverse finding that they were not entitled to recovery on their failure to disclose claim was against the great weight and preponderance of the evidence. Therefore, we overrule the Bharadwajas' second issue.

## IX. ATTORNEY'S FEES

The trial court awarded the Bharadwajas attorney's fees in the amount of $10,000. In their third issue on appeal, the Bharadwajas contend the trial court abused its discretion by awarding them less than half the amount of attorney's fees they incurred. In their fifth cross-issue, the Hayses assert no attorney's fees should have been awarded because (1) the Bharadwajas were not the prevailing parties, (2) the Bharadwajas did not segregate their attorney's fees between recoverable and non-recoverable claims, and (3) the evidence is legally insufficient to support the award.

### A. Standard of review and applicable law

A prevailing party cannot recover attorney's fees unless permitted by statute or contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). "Statutes providing that a party 'may recover', 'shall be awarded', or 'is entitled to' attorney fees are not discretionary." *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). "When a statute provides for mandatory recovery of attorney's fees, the trial court has no discretion but to award them if they are pleaded and proved." *State v. Buchanan*, 572 S.W.3d 746, 750 (Tex. App.—Austin 2019, no pet.). Although the trial court did not have discretion to deny the Bharadwajas an award of attorney's fees pursuant to the statute, the trial court had discretion to fix the amount of attorney's fees. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *31 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.).

### B. Segregation of fees

We turn first to the Hayses' failure-to-segregate argument. Although the Hayses present only minimal briefing on this, even if we assume its briefing is adequate, we conclude the Hayses failed to preserve error on this issue by failing to raise it in the trial court. *See* Tex. R. App. P. 33.1(a)(1); *Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("A failure to segregate attorney's fees in a case containing multiple causes of action, only some of which entitle the

33

recovery of attorney's fees, can result in the recovery of zero attorney's fees" but "if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived"); *Hazel v. Lonesome Ranch Prop. Owners Ass'n*, 656 S.W.3d 468, 499 (Tex. App.—El Paso 2022, no pet.) (issue of segregation waived because it was never brought to trial court's attention either before or during trial); *RSL Funding, LLC v. Metro. Life Ins. Co.*, No. 01-23-00190-CV, 2025 WL 920767, at \*21 (Tex. App.—Houston [1st Dist.] Mar. 27, 2025, no pet.) ("in an appeal from a judgment following a bench trial, . . . a party waives an objection to failure to segregate attorney's fees if the party does not raise the objection before the trial court renders judgment"). Here, the Hayses did not cross-examine the Bharadwajas' attorney on his testimony about his fees, nor did they raise a failure-to-segregate objection to his fee request. Therefore, the Hayses' contention that the Bharadwajas failed to segregate their fees was not preserved for our review.

## C. Prevailing parties

The Bharadwajas' statutory repair or remedy claims and failure to disclose ownership information claim all provide for the recovery of attorney's fees. *See* Tex. Prop. Code Ann. § 92.0563(a)(5) ("A tenant's judicial remedies [for repair or remedy] shall include[,]" among other remedies, "attorney's fees, excluding any attorney's fees for a cause of action for damages relating to a personal injury."); § 92.205(a)(4) ("A tenant of a landlord who is liable under Section 92.202 [for failure to disclose] may obtain . . . a judgment against the landlord for court costs and attorney's fees").

"Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009). As discussed above, the Bharadwajas prevailed, at least in part, on their failure to repair or remedy claims. Therefore, the trial court had no discretion to

34

deny the Bharadwajas' request for attorney's fees. *See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009) (if attorney's fees are proper under statute, "the trial court has no discretion to deny them"). Nevertheless, the trial court had discretion to determine the amount of the fees. *Scott Pelley P.C.*, 2017 WL 3699823, at *31.

### D.   The Bharadwajas' attorney's fees request for pretrial and trial

A claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. *See Long v. Griffin*, 442 S.W.3d 253, 255–56 (Tex. 2014). Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012).

"[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). However, not every case when uncontradicted testimony is offered mandates an award of the amount claimed. *Id.* "For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Id.* "In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to case [sic] suspicion thereon." *Id.* "The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances,

35

especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Id.*

The trial court awarded the Bharadwajas $10,000 in attorney's fees plus additional contingent fees on appeal. The Bharadwajas' attorney, Henry Becker, testified about his fees and submitted his billing records as an exhibit. Becker testified he was the only attorney who worked on the case, and he charged $220 per hour. His two paralegals charged $150 per hour. Becker explained that the exhibit contained several blacked-out entries, which represented him dealing with issues associated with the property but that were "not reasonably necessary to the scope of representation for this lawsuit." The total fees amounted to $23,468 and total costs, separate from any fees, were $743.80.

The trial court abused its discretion in awarding only $10,000 in attorney's fees. Becker testified as to the time involved, the nature of the services that were rendered, and the reasonableness of the fees charged. This evidence was uncontroverted. We hold the evidence is clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise. Accordingly, we sustain the Bharadwajas' third issue and overrule the Hayses' fifth issue regarding the award of attorney's fees for the trial.

### E. The Bharadwajas' contingent appellate attorney's fees

The trial court also awarded the Bharadwajas contingent appellate attorney's fees in the event of a successful future appeal as follows: $15,000 for representation in the court of appeals; $5,000 for representation at the petition for review stage in the Texas Supreme Court; $5,000 for representation at the merits briefing stage in the Supreme Court; and $5,000 for representation through oral argument and completion of proceedings in the Supreme Court, together with post-judgment interest in the amount of 8.25% per annum on any contingent attorney's fees awarded in

36

this judgment from the date the award is made final by the appropriate appellate court's judgment. In their fifth cross-issue, the Hayses assert there is no evidence to support this award. We agree.

If trial attorney's fees are mandatory under a statute, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented. *See Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015). Contingent appellate fees have not yet been incurred and thus must be projected based on expert opinion testimony. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). "At the point when fees are awarded by the trial court, any appeal is still hypothetical," there is no certainty regarding who will represent the parties in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the parties may raise. *Id.* "Of course, this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

Here, the Bharadwajas presented no evidence about the services they reasonably believed would be necessary to defend the appeal and a reasonable hourly rate for those services. Therefore, we sustain the Hayses' fifth issue regarding the award of contingent appellate attorney's fees.

## X. CONCLUSION

For the reasons stated above, we (1) reverse the trial court's award of a reduction in the Bharadwajas' rent; (2) reverse the trial court's award of $10,000 in attorney's fees and render judgment for the Bharadwajas in the amount of $23,468;[18] (3) render judgment of a civil penalty

---

[18] *See Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 510 (Tex. App.—El Paso 2018, no pet.) (quoting *Ragsdale*, 801 S.W.2d at 882) ("when an attorney submits evidence of his fees, and that evidence is clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and is otherwise free from 'contradiction, inaccuracies and circumstances tending to cast suspicion thereon an appellate court may exercise its discretion and render judgment for attorney's fees in the interest of judicial economy' without the necessity of remanding the matter to the trial court for a new trial on that issue").

in favor of the Bharadwajas on each repair or remedy claim in the total amount of $6,600;[19] and (4) reverse the trial court's award of contingent appellate fees in favor of the Bharadwajas. We affirm the trial court's judgment in all other respects. We remand the case to the trial court for entry of a judgment consistent with this opinion.

MARIA SALAS MENDOZA, Chief Justice

June 19, 2025

Before Salas Mendoza C.J., Palafox and Soto, JJ.

---

[19] This amount represents the Bharadwajas' monthly rent of $2,800 plus $500 for each of their two failure to repair or remedy claims. *See* Tex. Prop. Code § 92.0563(a)(3) (tenant's judicial remedies "shall include" a judgment "for a civil penalty of one month's rent plus $500[.]").